

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
MAY 11 2016
ARTHUR JOHNSTON
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JONSHA BELL                                                    PLAINTIFF

v.                                         CIVIL ACTION NO. 5:16-cv-39 DCB-MTP

MANAGEMENT & TRAINING CORPORATION
and JOHN AND JANE DOES 1-100                                  DEFENDANTS

## COMPLAINT

*Jury Trial Demanded*

1. This complaint is brought by Jonsha Bell (hereinafter, "Plaintiff"), by and through undersigned counsel, against Management & Training Corporation and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2. Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. 1983 as well as the 8th and 14th Amendments to the United States Constitution. Subject Matter Jurisdiction is also appropriate based upon diversity of citizenship as the Plaintiff and Defendant are citizens of different states and the claim is in excess of $75,000.00. The Court also has pendent jurisdiction over the Plaintiff's state causes of action.

3. Venue is appropriate in this Court as all acts and/or omissions occurred in Wilkinson County, Mississippi, which is located within the Southern District of the United States District Court, Western Division.

## PARTIES

4. Plaintiff is currently an inmate incarcerated at the Mississippi State Penitentiary, located in Parchman, Mississippi. However, at all times material to this Complaint, he was a prisoner incarcerated at Wilkinson County Correctional Facility (hereinafter, "WCCF"). Substantial acts, omissions, and events which caused Plaintiff's injuries took place in Wilkinson

County, Mississippi.

5. Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, was given a contract by the Mississippi Department of Corrections ("MDOC") in April, 2012 for the management and oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee corrections division operates twenty-four (24) correctional facilities throughout the United States, with seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. The acts, omissions and events giving rise to Plaintiff's complaint occurred under MTC's management. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

6. The Plaintiff is ignorant as to the identities of Defendants John and Jane Does 1-100, who are unknown MTC officers, employees, agents, and or servants. Plaintiffs will amend this Complaint to allege their true names and allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendant herein, and were acting with the permission and consent within the course and scope of said agency and employment.

## FACTS

7. During the early morning hours of December 29, 2015, Plaintiff was physically attacked by several inmates while sleeping in his cell at WCCF.

8. At approximately 4:00 a.m., masked inmates armed with knives, known to be members of the Vice Lords gang, entered Plaintiff's cell, "A" Zone, Cell #113, and commenced a vicious attack upon Plaintiff. He awoke to his being beaten and stabbed repeatedly. Despite his attempts to fight his attackers off, they were successful in breaking his leg, puncturing one (1) of his lungs, and stabbing him in the head before ceasing their assault. In total, he suffered eleven (11) stab wounds.

9. After the assault, with the Plaintiff incapacitated due to his injuries, his assailants ran in and out of his cell, robbing him of his personal belongings.

10. Once his assailants were gone, with the assistance of his cell mate, Plaintiff was finally able to make his way to the door of his cell to cry out for help. He remained there, bleeding profusely from the wounds on his body, for approximately twenty (20) minutes before a guard arrived.

11. Plaintiff was rushed to the Southwest Mississippi Regional Medical Center, located in McComb, Mississippi, for emergency medical treatment. There, he was stabilized before undergoing surgery to repair the fracture to his left leg. He remained in the hospital for four (4) days, and was discharged on January 2, 2016. Upon information and belief, he was taken immediately to the Medical Unit at the Mississippi State Penitentiary, located in Parchman, Mississippi, where he continues to recover from his injuries.

## CONDITIONS AT WCCF

12. Long prior to the attack upon Plaintiff which is the subject of this lawsuit, WCCF was besieged with gang violence and contraband. The gang population was so out of control that

gang members essentially controlled the prison. WCCF Guards and other staff members assisted gang members by bringing in contraband. In return, gang members would pay the WCCF employees via "green dot cards". In addition, some WCCF employees were affiliated with gang members and afforded them favorable treatment and even aided and abetted the gang members in their illicit behavior. Gang members were selling drugs, cell phones and other contraband with the assistance and/or approval of MTC employees. The introduction of this contraband into the prison contributed to the atmosphere of violence in existence at the prison.

13. It is well documented that cell doors in most all of the units at the facility can easily be "rigged" to remain unlocked when shut—if the locks are operational in the first place—allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults. There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged," or non-operational doors. Defendant has historically failed to take adequate measures to ensure that the defective doors are replaced and has failed to supervise officers adequately to ensure that they routinely and effectively examine doors to check for rigging.

14. MTC supervisors and employees, including guards, were aware that the vast majority of prisoners had altered the locks on their doors which allowed the prisoners to open their cell doors whenever they chose to. Surveillance video exists showing prisoners moving around the prison at all hours of the night on numerous occasions when they were required to be locked down. MTC employees simply turned a blind eye to such actions, either because they are being paid to "look the other way" or simply do not care. MTC and its employees' actions constituted negligence, gross negligence and deliberate indifference to the safety of the prisoners, including the Decedent.

15. Weapons, such as homemade knives, were readily available at WCCF. Prisoners would utilize materials in the prison or get material smuggled in from guards. Some prisoners had homemade knives which were the size of swords.

16. MTC officials and employees were aware of the prevalence of weapons at the prison. Guards who were being paid by gang members simply looked the other way. Others did not care or did not report the incidents due to the fear of gang retaliation. Regardless, MTC officials failed to take proper precautions and safety measures to curtail weapons inside the prison.

17. Upon information and belief, MTC officials failed to conduct enough shakedowns, and when shakedowns were done, the guards would either ignore contraband or simply not report it due to the fact they were being paid by gang members. Such actions and inactions contributed to the incident in which the Plaintiff almost died.

18. In order to deal with gangs in prison, sound correctional policy mandates that prison officials institute programs to deal with gangs. Prison officials label gangs as "Security Threat Groups" ("STG's"). Such STG programs involve the prevention, identification, and management of gangs in prison. Upon information and belief, MTC has failed to institute any program to deal with the gang situation which exists at WCCF or has applied such measures with negligence, gross negligence and/or deliberate indifference. Such failures led to the Plaintiff's injuries.

19. MTC was understaffed on the day Plaintiff was attacked. MTC has a pattern and/or practice of understaffing at WCCF. The guards who are on duty are inadequately trained and/or supervised to handle the prison population which exists at WCCF. MTC's actions and inactions were negligent, grossly negligent, and/or deliberately indifferent to the safety and well-being of the Decedent.

## § 1983 CAUSES OF ACTION

20. By and through Defendants MTC and Doe Defendants 1-100's deliberate indifference to the safety of the Plaintiff and other WCCF inmates on December 29, 2015, and the establishment of customs, policies and practices which created unconstitutional conditions of confinement, Defendants MTC and Doe Defendants 1-100 violated the clearly established constitutional rights of the Plaintiff, including but not limited to:

   a) Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

   b) Plaintiff's right not to be deprived of liberty without due process of law;

   c) Plaintiff's right to be safe and protected from injuries while in Defendants' custody;

   d) Plaintiff's right to be protected by the prison officials and guards while under their control; and

   e) Plaintiff's right to be free from excessive and unreasonable force.

21. As a direct and foreseeable result of Defendants' actions, Plaintiff suffered damages including but not limited to, severe physical injuries, emotional distress, mental anguish, as well as pain and suffering.

22. Defendant MTC, by and through Doe Defendants 1-100 in their individual and official capacities, established customs, policies and practices which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Plaintiff and other WCCF inmates. These policies created unconstitutional conditions of confinement.

23. Such unwritten policies, customs and practices include but are not limited to the following:

   a. Inadequate and improper training, supervision and discipline of WCCF corrections officers;

b. Inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon WCCF inmates, including the Plaintiff, in violation of their constitutional rights;

c. Inadequate and improper procedures, policies and practices for investigating improper activities by WCCF correctional officers either through offender complaints of misconduct or through internally-initiated complaints or investigations;

d. Inadequate or improper procedures, policies and practices for identifying and taking appropriate action against WCCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights;

e. Failing to prevent and/or investigate allegations of improper relationships between WCCF correctional officers and WCCF inmates which directly led to the December 29, 2015 assault; and

f. Failing to adequately staff WCCF with trained and qualified guards and allowing the prison to be understaffed.

## NEGLIGENT AND/OR GROSSLY NEGLIGENT HIRING AND SUPERVISION

24. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 23 hereinabove.

25. Plaintiff alleges Defendant MTC negligently, or grossly negligently, hired, supervised, and retained its employees, inter alia, by a) failing to care for and ensure the Plaintiff's safety while at WCCF; b) failing to properly train, supervise, discipline, retain, hire, and/or discharge its employees agents, and/or representatives; and c) were otherwise negligent or grossly negligent in their care and treatment of the Plaintiff, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

26. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 25 hereinabove.

7

27. Defendants MTC and other unknown WCCF correctional officers (Does 1-100) acted with negligence, gross negligence, and/or intentionally allowed or failed to prevent the Plaintiff's assault on December 29, 2015. At all times relevant, each Defendant owed a duty to the Plaintiff to ensure his safety, and the Defendants breached this duty. The actions and inactions of Defendant MTC and/or other WCCF correctional officers led directly to the injuries suffered by the Plaintiff. Defendant MTC, as Defendant John and Jane Does 1-100's employer, is liable for their actions which were undertaken during the course and scope of their employment with Defendant MTC.

28. Defendant MTC is also responsible for the actions and/or inactions alleged herein against Defendant John and Jane Does 1-100 which caused the damages suffered by the Plaintiff. Such actions and/or inactions by said individual Defendants were committed within the course and scope of their employment with Defendant MTC.

## PUNITIVE DAMAGES

29. The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 28 hereinabove.

30. The Defendants have acted in complete disregard for the safety of the Plaintiff by acting in a grossly negligent manner as previously described herein. The actions of the Defendants warrant punitive damages.

31. The Defendants' actions exhibited gross negligence and direct disregard of the safety of the Plaintiff. Punitive damages should be awarded against the Defendants. Defendants' tortuous actions have caused the Plaintiff bodily injures, emotional distress and mental anguish.

## PRAYER FOR RELIEF

The Plaintiff requests a jury trial and seeks the following relief:

A. Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court.

B. Punitive damages of, from and against the Defendants, in an amount to be determined by this Court.

C. Reasonable attorney's fees and all costs of this court.

D. Pre and post judgment interest.

E. Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 10th day of May, 2016.

JONSHA BELL, PLAINTIFF

BY: _____
CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
*Attorneys for Plaintiff*

9