IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JONSHA BELL                                                        PLAINTIFF

v.                                           CAUSE NO. 5:16-cv-39-DCB-MTP

MANAGEMENT & TRAINING CORPORATION, <u>et al</u>.      DEFENDANTS

<u>ORDER AND OPINION</u>

This cause is before the Court on a motion for summary judgment **[Doc. 34]** filed by Defendant Management & Training Corporation ("MTC"). Having considered the motion, Plaintiff Jonsha Bell's response, applicable statutory and case law, and being otherwise fully informed in the premises, the Court finds as follows:

**I. BACKGROUND**

A prisoner sued the for-profit operator of a Mississippi prison, alleging civil rights violations and negligence, after inmates attacked him in his cell early one morning. The prison operator moves for summary judgment, pointing to the prisoner's failure to exhaust administrative remedies pre-suit. The prisoner rejoins that the suit should proceed because he has exhausted all such remedies available to him. Whether the suit should indeed proceed turns on the interplay between the Prison Litigation Reform Act and the grievance procedures adopted by the Mississippi Department of Corrections.

Defendant MTC is a national for-profit prison operator. [Doc. 1, ¶5] It contracted with the Mississippi Department of Corrections ("MDOC") to operate the Wilkinson County Correctional Facility ("WCCF"). [Doc. 1, ¶5]

Plaintiff Jonsha Bell was a WCCF inmate in late 2015. [Doc. 1, ¶4] He alleges that around 4:00 A.M. one morning, he was "beaten and stabbed repeatedly" by other WCCF inmates. [Doc. 1, ¶¶ 7-9] Faulting MTC for creating an unsafe prison environment, Bell sued it for (1) civil rights violations under 42 U.S.C. § 1983; (2) negligent hiring and supervision; and (3) vicarious liability. [Doc. 1, ¶¶ 20-28]

In his Complaint, Bell catalogs a pattern of security-related oversight at WCCF — a pattern he contends culminated in his attack. Bell alleges for example that MTC employees emboldened an already-unruly prison gang population by helping inmates sell contraband and by ignoring homemade weapons. [Doc. 1, ¶¶12-16] Prison security was further compromised, Bell submits, by MTC's failure to ensure that cell-doors locked and its disinclination to discipline inmates for roaming the prison halls after-hours. [Doc. 1, ¶¶13-14]

Before suing MTC, Bell submitted a "Request for Administrative Remedy" to the MDOC. [Doc. 34-1, p. 2] In it, he described his attack and asked the MDOC to re-evaluate security

measures at MTC facilities, award him damages for stolen property and personal injury, and prosecute his attackers. [Doc. 34-1, p. 2]

The MDOC rejected Bell's request. [Doc. 34-1, p. 1] Bell learned his request was rejected through a form completed by Administrative Remedy Program Director Pennington. [Doc. 34-1, p. 1] The form explains that Bell's request was rejected because it asked for relief "beyond the power of the [MDOC] to grant." [Doc. 34-1, p. 1]

The parties dispute the legal significance of this rejection in the context of the Prison Litigation Reform Act. MTC insists that Bell should have "appealed" the rejection, and because he failed to do so, he cannot sue in this Court. Bell rejoins that the rejection removed his complaint from the MDOC's administrative remedy procedure entirely, leaving him with no choice but to sue. The Court addresses each contention in turn.

## II. DISCUSSION

A prisoner cannot bring a 42 U.S.C. § 1983 suit challenging prison conditions unless he first exhausts available administrative remedies. See 42 U.S.C. § 1997e(a). So holds the Prison Litigation Reform Act ("PLRA"), which forms the basis of the motion before the Court.

Congress created the PLRA to "reduce the quantity and improve the quality of prisoner suits." Porter v. Nussle, 534 U.S. 516, 524 (2002). The PLRA borrows the concept of exhaustion from administrative law. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Exhaustion doctrine generally holds that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Id. at 89.

Exhaustion is a threshold issue. And the Court must address it to determine whether this litigation is proceeding in the right forum at the right time. Dillon v. Rogers, 596 F.3d 260, 271 (5th Cir. 2010). Translated to the prison context, exhaustion requires a prisoner to follow a prison's internal grievance procedures before suing in court. The purpose of PLRA exhaustion is to give "officials 'time and opportunity to address complaints internally.'" Johnson v. Johnson, 385 F.3d 503, 516 (5th Cir. 2004) (quoting Porter, 534 U.S. at 525).

PLRA non-exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 216 (2007). Thus, Defendant MTC must prove that Bell failed to exhaust available administrative remedies. Id. at 216. If MTC carries its burden, dismissal is mandatory. Thorson v. Epps, 701 F.3d 444, 446 (5th Cir. 2012); Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam).

4

The Court looks to WCCF's grievance procedures to determine the steps Bell must follow to exhaust available administrative remedies. Cowart v. Erwin, 837 F.3d 444, 452 (5th Cir. 2016); see also Jones, 549 U.S. at 218 ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). In determining whether Bell has exhausted available administrative remedies, the Court neither "add[s] to nor subtract[s] from" WCCF's grievance procedures. Cantwell v. Sterling, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam).

The MDOC controls WCCF's grievance procedures. See Miss. Code Ann. § 47-5-801 (authorizing the MDOC to adopt administrative review procedures for state prisons). And the MDOC implements a two-step grievance procedure known as the Administrative Remedy Program ("ARP"). But before any "step" is taken, the ARP Director "screens" prisoner complaints. [Doc. 34-2, p. 3].

As part of the "screening" process, the ARP Director conducts an initial compliance review. [Doc. 34-2, p. 2] His task is to determine whether the "matter is not appealable though this process." [Doc. 34-2, p. 3] If the ARP Director concludes the matter is "appealable through this [ARP] process," the complaint is "accepted" into the ARP, and it proceeds to "step one" and, if appealed, a "step two" review. [Doc. 34-2, pp. 3-4]

5

But if the complaint is rejected — because, for example, it seeks relief that the MDOC lacks the power to grant — it is "not appealable" through the ARP, and the prisoner is unable to proceed to "step one." See, e.g., Yankton v. Epps, 652 Fed. App'x 242, 245 (5th Cir. 2016) (a screener's rejection of a complaint forecloses acceptance into the ARP and precludes a prisoner from proceeding to "step one"); Berry v. Wexford Health Sources, 3:14-cv-665, 2016 WL 4030934, at *2 (S.D. Miss. July 26, 2016) (same).

The Fifth Circuit "strictly" approaches the PLRA's exhaustion requirement. Cowart, 837 F.3d at 451.[1] But even so, only "available" remedies need be exhausted. Ross v. Blake, 136 S. Ct. 1850, 1855 (2016); Davis v. Fernandez, 798 F.3d 290, 294 (5th Cir. 2015).[2] And a remedy is "available" only if it is "capable of use to obtain some relief for the action complained of." Ross, 136 S. Ct. at 185 (internal citation and quotations omitted).

Although the availability of administrative remedies is a question of law, whether Bell has exhausted those remedies is a mixed question of law and fact. Dillon, 596 F.3d at 266. To warrant

---

[1] Stated differently, a prisoner must "pursue the grievance remedy to conclusion." Wilson v. Epps, 776 F.3d 296, 301 (5th Cir. 2015).

[2] The Fifth Circuit also declares administrative remedies exhausted when a prisoner's complaint gives prison officials "fair notice" of the problem, and "there are no further avenues for administrative resolution." Moussazadeh v. Tex. Dep't of Crim. Justice, 703 F.3d 781, 788 (5th Cir. 2012).

6

summary judgment, MTC must show beyond doubt all of the elements of the defense of exhaustion. Id. at 266. And here, that means MTC must show that Bell failed to exhaust the available administrative remedies implemented by WCCF and prescribed by the MDOC's two-step grievance procedure.

Turning to Bell's efforts here, it is undisputed that Bell filed a request for an administrative remedy, as contemplated by the ARP screening procedures. [Doc. 35, p. 5] And it is undisputed that after the ARP Director returned a form indicating that the request was "rejected" because the relief sought was "beyond the power of the Mississippi Department of Corrections to grant," Bell sued in this Court. [Doc. 34-1, p. 1]

MTC contends that because Bell completed "step one" but not "step two" of the ARP, he failed to exhaust available administrative remedies. [Doc. 35, p. 1] MTC's argument flows from its assumption that Bell entered "step one" of the ARP when he filed his request for an administrative remedy. [Doc. 35, p. 2] The ARP Director's "rejection" to proceed in the ARP, MTC insists, is an adverse "step one" decision that Bell was obligated to appeal. [Doc. 35, pp. 5-6]

Bell describes the ARP grievance procedure differently. [Doc. 37, p. 2] He argues that the ARP Director's "rejection" of his complaint at the screening stage denied him entry into the ARP,

7

full-stop. [Doc. 37. P. 4] After the ARP Director "rejected" his request to enter the ARP, Bell reasons, he lacked an available administrative remedy. [Doc. 37, p. 4]

Both parties cite Berry v. Wexford Health Sources, a recent United States District Court for the Southern District of Mississippi opinion with similar facts, in their papers.[3] [Docs. 35, pp. 8-9; 37, p. 2] In Berry, a state prisoner sued the prison's private healthcare provider complaining of deliberate indifference towards his medical needs. Id. at *1. But before he sued, the prisoner filed a formal request for administrative remedy with the MDOC. Id. That request, like Bell's, was "rejected" at the screening stage as "beyond the power of the Mississippi Department of Corrections to grant." Id. The healthcare provider moved to dismiss, contending the prisoner failed to exhaust available administrative remedies. Id. The court denied the motion. Id. at *2.

In so holding, the court advised that the prisoner exhausted available administrative remedies under the ARP (and, by extension, the PLRA) when his complaint was denied at the screening phase. Id. After that denial, the court reasoned, the prisoner lacked any "available administrative remedy," and was free to seek judicial redress. Id. Central to the court's conclusion was its

---

[3] Berry v. Wexford Health Sources, 3:14-cv-665, 2016 WL 4030934 (S.D. Miss. July 26, 2016)

8

characterization of a rejection at the screening stage as a pre-step-one — or "step zero" — rejection from which no appeal can be taken within the ARP system. Id.

Although it was the first to cite Berry, MTC attempts to explain-away the opinion in its reply brief. [Doc. 39, pp. 4-5] MTC casts Berry as an "unpublished and non-precedential opinion" contrary to "binding precedent and controlling statutory authority." [Doc. 39, p. 4] And without explaining why that's so, MTC simply declares that "the PLRA and all binding authority applying it demand that Bell's federal claims be dismiss [*sic*]." [Doc. 39, p. 5]

MTC is correct on one point. Berry is an unpublished district court opinion and is of course non-binding. But MTC nowhere explains why it is wrong to construe a complaint's rejection at the screening phase as an exhaustion of available administrative remedies — particularly when such a rejection removes "the possibility of some relief," as it did here. See Booth v. Churner, 532 U.S. 731, 735 n. 4 (2001). Nor is it clear from MTC's briefing how Berry's common-sense characterization of the MDOC's grievance procedures flouts "binding precedent and controlling statutory authority," much less how such authority "demands" dismissal here.

The text of the ARP supports Bell's position. A prisoner is not within the ARP — and has not reached "step one" — when his

9

complaint is "rejected" at the screening phase. [Doc. 34-2, p. 3] The ARP itself distinguishes the screening phase from the two-step ARP process, requiring screening "prior to assignment to the First Step." [Doc. 34-2, p. 3]; see also Yankton, 652 Fed. App'x at 245 (a request is not "accepted" into the ARP unless and until it meets "specified criteria."). And the ARP states that a "rejected" request for administrative remedy is "not appealable through this process." [Doc. 34-2, p. 3] Thus, MTC's argument that Bell should have "appealed" his rejection — a rejection the ARP deems "not appealable" — is unpersuasive.

After Bell's complaint was denied entry into the ARP, he lacked an available administrative remedy. There was no "next step." See Cowart, 837 F.3d at 452 (affirming district court's determination that prisoner exhausted available remedies when prison grievance procedure precluded prisoner from taking the "next step"). And the ARP was no longer "capable of use to obtain some relief for the action complained of," Ross, 136 S. Ct. at 185, for the simple fact that the ARP's own rules prohibited Bell from appealing the ARP Director's rejection of his pre-step-one complaint. [Doc. 34-2, p. 3] Unable to appeal the ARP Director's adverse screening decision, and therefore prohibited from even attempting to resolve his complaint through the ARP, Bell "pursue[d] the grievance remedy to conclusion" before filing suit. Wilson, 776 F.3d at 301.

10

The ARP Director's erroneous "rejection" of Bell's complaint deprived Bell of the opportunity to resolve it within the ARP. MTC offers no reason why the ARP Director chose to "reject" Bell's complaint. And the rejection is particularly puzzling because it appears that other prisoner complaints requesting money damages have been "accepted" into the ARP. See, e.g., Davis v. Wexford Health Servs., 2:11-cv-142, 2013 WL 1180891, at *1 (S.D. Miss. Mar. 20, 2013). Granted, some of the relief Bell sought – money damages, for example – was beyond the power of the MDOC to grant. But as MTC admits in its briefing, the MDOC is empowered to provide some of the relief Bell requested; it could fire gang-affiliated employees, revisit safety procedures, and perform cell-door maintenance. [Doc. 35, p. 8]

The ARP Director erred in prohibiting Bell from participating in the ARP on the basis that some of the relief he sought was beyond the power of the MDOC to grant. There was simply "no next step (save filing a lawsuit) to which" Bell could advance. Wilson, 776 F.3d at 301. Shorn of an administrative remedy, Bell quite rightly looked to the courts to adjudicate his claim.

MTC does not complain that Bell's request for administrative remedy failed to provide prison officials with "fair notice" of the problem. Moussazadeh, 703 F.3d at 788. Nor can it. Bell's request describes in detail the alleged assault and the security

measures that he contends facilitated it. [Doc. 34-1, p. 2] And the facts Bell cited in his administrative remedy request are the same facts that Bell marshals in support of his § 1983 claim. [Compare Doc. 34-1, p. 2 with Doc. 1, ¶¶ 13-14]

MTC has not met its summary judgment burden of proving that Bell failed to exhaust available administrative remedies. Dillon, 596 F.3d at 266. To the contrary, the record confirms that Bell sought administrative redress for his complaints within MDOC's grievance-processing scheme as far as the MDOC and the ARP Director would allow him. The Court therefore finds that Bell has exhausted such administrative remedies as are available to him, and denies MTC's motion for summary judgment on exhaustion grounds as to Bell's federal claims.

Turning to Bell's state-law claims, MTC urges dismissal under Section 47-5-803 of the Mississippi Code. That statute requires a prisoner to exhaust ARP procedures before suing "the State of Mississippi, the Department of Corrections or its officials or employees." MISS. CODE. ANN. § 47-5-803. No Mississippi appellate court has determined whether the operator of a private prison is an "official or employee" of the MDOC under the statute.[4]

---

[4] Several opinions from the Southern District of Mississippi have recognized the absence of binding Mississippi authority on the issue. See, e.g., Pickens v. Mgmt. & Training Corp., 3:16-cv-913, 2017 WL 5559847, at *3 n. 19 (S.D. Miss. Nov. 17, 2017) (recognizing the issue as unresolved by state authorities but concluding that exhaustion does not apply to claims against

But the Court need not resolve that unsettled issue. The PLRA's exhaustion requirement is in all significant respects identical to the exhaustion requirement contained in Section 47-5-803 of the Mississippi Code. See J.H. v. Mgmt. & Training Corp., 3:16-cv-802, 2017 WL 4847532, at *1 n. 4 (S.D. Miss. Oct. 26, 2017). And the parties agree on the point. [Docs. 35, p. 9; 37, p. 9] Having determined that Bell exhausted "such administrative remedies as are available" under the PLRA, the Court concludes that Bell's efforts to administratively resolve his grievance constitute "exhaust[ion] [of] the remedies as provided" in the ARP under Section 47-5-803 of the Mississippi Code.

### III. CONCLUSION

MTC is not entitled to summary judgment on the ground that Bell failed to exhaust available administrative remedies under the PLRA and Section 47-5-803 of the Mississippi Code. Bell as a matter of law exhausted available administrative remedies under both statutes when the ARP Director "rejected" his request for administrative remedy. Through this pre-step-one rejection, the ARP Director precluded Bell from pursuing relief within the ARP framework, deprived Bell of the right to an intra-ARP appeal, and eliminated any possibility that the ARP was "capable of use to

---

private prisons); Evans v. Mgmt. & Training Corp., 3:15-cv-770, 2017 WL 78803, at *3 (S.D. Miss. Jan. 6, 2017) (finding no binding authority on the issue).

13

obtain some relief for the action complained of." Ross, 136 S. Ct. at 185.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that Defendant Management & Training Corporation's Motion for Summary Judgment **[Doc. 34]** is **DENIED.**

**SO ORDERED,** this the 7th day of December, 2017.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE